UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAVID ADAMS,

                     Plaintiff,                            Case No. 1:21-cv-572

v.                                                 Honorable Ray Kent

MATT MACAULEY et al.,

                     Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has consented to the undersigned conducting all proceedings in this case (ECF No. 7).

      Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendants Robinson, Macauley, Moyer, Russell, Morris, Felver, Piggott, Ketchum, Mekhayel, and Kelsey.

**Discussion**

I.     **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Defendants Grievance Coordinator Marshaun Robinson, Warden Matt Macauley, "Supervisual/Nursemen" Joshua M. Langdon, and MDOC Legal Affairs Manager Richard D. Russell.

After Plaintiff filed his complaint in this case, he filed a motion to supplement his complaint to include new Defendants and claims (ECF No. 12), a first amended complaint with integrated exhibits (ECF Nos. 14 through 14-3), and an affidavit (ECF No. 16), in which he asserts that specific staff members have continued to target him after he filed this action.  As discussed *infra*, the Court will grant Plaintiff's request to supplement, construed as a motion to amend the complaint to add the following individuals as Defendants:  Inspector Lisa Moyer, and Corrections Officers K. Morris, Unknown Felver, Unknown Piggott, Unknown Ketchum, A. Mekhayel, and Unknown Kelsey.  The Court will review the amended complaint.

In his amended complaint, Plaintiff alleges that on July 9, 2020, while he was in solitary confinement, he submitted an urgent health care request to Defendant Langdon, seeking medical care for serious injuries caused by staff lacing his food with "an undetectable substance." The health care request is attached to the pleading as an exhibit and seeks assistance for alleged tampering of his food, which Plaintiff claims has caused unspecified physical and emotional injuries (ECF No. 14-1, PageID.80).  Defendant Langdon read the request at Plaintiff's cell on camera, but refused to render any form of medical care.  Defendant Langdon also refused to record the kite, acting as though he had never accepted it.

2

On July 15, 2020, Plaintiff submitted a grievance against Defendant Langdon (*Id.*, PageID.81).   On July 20, 2020, Defendant Robinson deliberately falsified a response to the grievance in order to cover up Defendant Langdon's misconduct (*Id.*, PageID.82).   On August 7, 2020, Defendant Macauley denied Plaintiff's appeal at step II, stating that there were no active kites logged in Plaintiff's file and omitting any mention of the video evidence which showed Defendant Langdon reading the request and walking away from Plaintiff's cell (*Id.*, PageID.84). Defendant Russell failed to respond to Plaintiff's step III grievance appeal.

On September 3, 2020, Defendant Morris gave Plaintiff what Plaintiff describes as "precontaminated food," which Plaintiff only discovered after he began to experience itching all over his body.  (*Id.*, PageID.85.)   Plaintiff later asked Defendant Morris for medical care, but Defendant Morris told him to kill himself.   Plaintiff wrote a grievance and gave it to Defendant Moyer.   On September 5, 2020, Defendant Moyer reviewed Plaintiff's grievance, but refused to process it.   Instead Defendant Moyer emailed it to Defendant Robinson for processing.   Defendant Robinson refused to process the grievance.  (*Id.*, PageID.86-90.)   On September 14, 2020, Plaintiff sent a grievance against Health Services to Defendant Robinson, who refused to give Plaintiff a receipt or to address the merits of the grievance.  (*Id.*)

Plaintiff alleges that on December 15, 2020, non-Defendant D. Suppes rejected five pictures sent through J-Pay based on a lie.   Plaintiff filed a grievance, which was denied at step II by Defendant Macauley.   Defendant Macauley failed to provide an explanation for the denial of each picture.  (*Id.*, PageID.91.)   However, the attached copy of the step I grievance response indicates that Plaintiff had been informed that the photos were rejected because they depicted sexually explicit female "crotch shots."  (*Id.*, PageID.93.)   In addition, the step II response states that the photos were rejected because they violated the policy for nudity.  (*Id.*, PageID.95.)

On January 12, 2021, Plaintiff claims that non-Defendant Suppes charged Plaintiff at least $0.40 more than allowable for postage of his legal mail.  Plaintiff filed a grievance, but Defendant Macauley failed to conduct an investigation.  (*Id.*, PageID.96–97.)  The step I grievance response by non-Defendant J. Page states:

> Spoke with D. Suppes in the mail room.  She had weighed the envelope and used the postal template to verify the envelopes weight & girth before referencing the USPS postage rate sheet to determine the cost of the postage.  Envelopes thicker than 1/4" must be processed at the package rate, and mail weighing over 13 ounces are considered Priority mail.  The USPS rates sheets are updated every year via the USPS.  Prisoner Adams mail was very thick.

(*Id.*, PageID.99.)  J. Page concluded that Plaintiff's mail weighed over two ounces and that he was charged correctly.  (*Id.*)  The step II response reiterated the same facts and upheld the decision at step I.  (*Id.*, PageID.101.)

On February 1, 2021, MBP employee Ketchum gave Plaintiff "precontaminated" food, which allegedly caused unbearable itching, rash, sores, and dark spots.  (*Id.* at PageID.85.) When Plaintiff asked Defendant Ketchum why he continued to poison him, Ketchum ignored Plaintiff.  Plaintiff filed a grievance on February 2, 2021, and gave it to Defendant Robinson, who deliberately falsified a step I response, stating that the grievance was vague.  Plaintiff also filed a health care request, which was ignored by Health Services.  On February 5, 2021, Plaintiff filed a grievance on Health Services and gave it to Defendant Robinson, who refused to address it.  On March 24, 2021, Defendant Macauley falsified step I and II responses.  Defendant Russell failed to respond to the step III grievance at all.  (*Id.*, PageID.102–106.)

On March 18, 2021, non-Defendant Suppes again rejected some photos that had been sent to Plaintiff and refused to notify the sender of the rejections.  Defendant Robinson refused to address the contents of Plaintiff's grievance regarding the rejection on March 23, 2021, because Plaintiff was on modified access to the grievance procedure.  On April 21, 2021,

Defendant Macauley ignored Plaintiff's explanation and evidence, which he claims proves that Suppes was lying, and upheld the step I rejection.  (ECF No. 14-2, PageID.111–118.)

Plaintiff alleges that on April 1, 2021, he filed a grievance asserting that he had been forced to wear mildewed clothing for two and a half months.  Defendant Robinson returned the grievance as nongrievable because Plaintiff was asserting an issue that affected the entire prison population.  (*Id.*, PageID.119-122.)

On May 5, 2021, Defendant Felver gave Plaintiff supposedly precontaminated food, which caused unbearable itching, rash, sores, and dark spots.  Plaintiff was on modified access to the grievance procedure, so he submitted a request for a grievance form to Defendant Robinson, who failed to respond to the request.  Plaintiff also submitted a request for health care assistance, but did not receive a response.  Plaintiff submitted another health care kite on June 6, 2021, to no avail.  On June 8, 2021, Plaintiff filed a grievance on health services for failing to respond to his kites.  Plaintiff also submitted another kite seeking medical care for his reaction to the contaminated food.  On June 10, 2021, Plaintiff filed a grievance on health services for failing to respond to his June 8, 2021, kite.

On May 6, 2021, Plaintiff attempted to send Interdepartmental Mail (ID Mail) to the MDOC Director's Office.  Plaintiff claims that postage was improperly applied to the mail. Plaintiff filed a grievance, which was denied by non-Defendant S. Lewis, who stated:

> The Grievant submitted his envelope on a CSJ-318 Expedited Legal Mail disbursement.  The use of this disbursement is for charging postage to envelopes determined to be legal in nature, and for expedited processing.
>
> Mailroom staff have told the Grievant previously his signature on the CSJ-318 form authorizes them to place postage on his envelope and send it out via USPS.
>
> If the Greivant's intent is for an envelope to be sent ID mail, he can note this on the envelope and turn it into his unit PC or send it through the unit mail bags.  The envelope will be placed in the outgoing ID mail bucket for pick up.

(*Id.*, PageID.131.)  The step II response by Defendant Macauley states that if Plaintiff wished to send mail out via ID, he could note it on the envelope and turn it into his unit PC or send it through the unit mail bags.  (*Id.*, PageID.133.)

On May 31, 2021, Defendant Ketchum gave Plaintiff precontaminated food, which allegedly caused unbearable itching, rash, sores, and dark spots.  Later that day, Plaintiff asked Defendant Ketchum for help, but he told Plaintiff to kill himself if he did not like the pain.  Plaintiff submitted a health care request that evening, to no avail.  Plaintiff filed a grievance on Defendant Ketchum and another on health services.  Defendant Robinson did not record Plaintiff's grievances or address the contents of Plaintiff's complaint.  (ECF No. 14-3, PageID.136–138.)  On June 6, 2021, Plaintiff submitted an urgent health care request, but never received a "processing receipt" for the request.  Nor was Plaintiff ever seen by a health care professional.  (*Id*., PageID.139–141.)

On June 8, 2021, Plaintiff submitted an urgent health care request and a grievance regarding the failure to treat his physical injuries.  Health Services failed to address the kite or to even give Plaintiff a receipt for it, and Defendant Robinson did not process Plaintiff's grievance. (*Id*., PageID.142–144.)

On June 9, 2021, Defendant Kelsey gave Plaintiff supposedly precontaminated food, which caused unbearable itching.  When Plaintiff complained and sought help, Defendant Kelsey told him to kill himself if he did not like the pain.  Plaintiff submitted a health care request, which was not addressed by health services, and filed grievances on Defendant Kelsey and Health Services, but Defendant Robison failed to record the grievance.  (*Id*., PageID.145–149.)

On June 12, 2021, Defendant Piggott gave Plaintiff precontaminated food, which allegedly caused unbearable itching, rash, sores, and dark spots.  Defendant Piggott ignored Plaintiff's requests for help.  The next day, Plaintiff filed a health care request, which was never

recorded or responded to by health services, and a grievance on Defendant Piggott.  On June 15, 2021, Plaintiff filed a grievance on health services, which Defendant Robinson refused to process. (*Id*., PageID.150–154.)

On June 16, 2021, MBP employee Peiffer purportedly gave Plaintiff precontaminated food, which caused unbearable itching, rash, sores, and dark spots.  Plaintiff asked Peiffer for help, but he told Plaintiff to kill himself.  On June 16, 2021, Plaintiff submitted a health care kite and a grievance on Peiffer.  Defendant Robinson refused to respond to the grievance.  On June 18, 2021, Plaintiff filed a grievance on health services for failing to respond to his kite, but Defendant Robinson refused to process the grievance.  On June 25, 2021, Defendant Macauley upheld the rejection of Plaintiff's grievances on this issue.  (*Id*., PageID.137.)

On June 20, 2021, Defendant Mekhayel allegedly gave Plaintiff "precontaminated" food, which allegedly caused unbearable itching.  When Plaintiff complained, Defendant Mekhayel told him to kill himself.  Plaintiff filed a health care request, which health services failed to address, and a grievance on Defendant Mekhayel.  Plaintiff also filed a grievance on health services.  Defendant Robinson did not record the grievances or take corrective action.  (*Id.*, PageID.155–159.)

On June 21, 2021, Defendant Mekhayel again gave Plaintiff "precontaminated" food, which supposedly caused unbearable itching.  When Plaintiff complained, Defendant Mekhayel ignored him.  Plaintiff filed a health care request, which health services did not address, and a grievance on Defendant Mekhayel.  Plaintiff also filed a grievance on health services. Defendant Robinson did not record the grievances or take corrective action.  (*Id.*, PageID.160– 163.)

On July 2, 2021, Defendant Kelsey gave Plaintiff a tray with supposedly precontaminated food, which caused unbearable itching.  When Plaintiff complained, Defendant Kelsey ignored him.  Defendant Moyer subsequently ignored Plaintiff's grievance on Defendant Kelsey.  (*Id.* at PageID.165.)

Plaintiff seeks preliminary and permanent injunctive relief, as well as damages.

## II.    **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.   **No right to file a grievance**

The only allegations that Plaintiff makes against Defendants Robinson, Macauley, Moyer, and Russell are with regard to their handling of his grievances. Plaintiff claims that Defendant Robinson repeatedly falsified grievance responses and failed to respond to grievances. In addition, Plaintiff claims that Defendants Macauley and Russell failed to properly address his step II and III grievance appeals.

A.   **Due Process**

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest

in the grievance process, the conduct of Defendants Robinson, Macauley, Moyer, and Russell did not deprive him of due process.

### B.       First Amendment -- Right to Petition Government

Plaintiff's right to petition government is not violated by the failure of Defendants Robinson, Macauley, Moyer, and Russell to process or act on his grievances.  The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

Moreover, the actions of Defendants Robinson, Macauley, Moyer, and Russell have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)).  Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).  Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil

rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendants Robinson, Macauley, Moyer, and Russell.

IV.    **Eighth Amendment**

Plaintiff claims that Defendant Langdon refused to deliver his health care kite on July 9, 2020, which prevented him from receiving medical attention for his symptoms, which included unbearable itching, rash, sores, and dark spots. In addition, Plaintiff claims that Defendants Morris, Felver, Piggott, Ketchum, Mekhayel, and Kelsey subjected him to cruel and unusual punishment when they gave him contaminated food, which caused Plaintiff to suffer from unbearable itching and skin problems. He further contends that Defendants Morris, Felver, Piggott, Ketchum, Mekhayel, and Kelsey violated the Eighth Amendment when they did not contact health services in response to his complaints that they had poisoned his food and that he was suffering itching and stinging all over his body. Plaintiff complains that Defendant Kelsey also told him "Kill yourself if U don't like the pain Adams." (Am. Compl., ECF No. 14-3, PageID.145.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson*

11

*v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components.  *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  *Id.* at 836.  "[P]rison officials who actually

12

knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff claims that Defendant Langdon deliberately prevented him from obtaining any medical assistance after his food was laced with an "undetectable" substance on July 9, 2020. Plaintiff also contends that he kited health care seeking medical assistance for severe itching, rash, sores, and dark spots, which he believes were the result of contaminated food.   The Court concludes that based on the allegations in the complaint, Plaintiff has stated an Eighth Amendment claim against Defendant Langdon.   Therefore, Defendant Langdon may not be dismissed on initial review.

Plaintiff next asserts that Defendants Morris, Felver, Piggott, Ketchum, Mekhayel, and Kelsey intentionally gave him "precontaminated" food in violation of the Eighth Amendment. "The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food . . . ." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832).  Plaintiff concludes that the food that Defendants Morris, Felver, Piggott, Ketchum, Mekhayel, and Kelsey provided must have been contaminated, because he suffered from rashes and itching after eating some meals provided by Defendants.

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not

13

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Plaintiff's assertion that Defendants Morris, Felver, Piggott, Ketchum, Mekhayel, and Kelsey gave him contaminated food is entirely conclusory.  The mere fact that Plaintiff suffered rashes and itching after eating certain meals does not permit the Court to make a plausible inference of misconduct.  *Id.*  Plaintiff therefore fails to state an Eighth Amendment claim against Defendants Morris, Felver, Piggott, Ketchum, Mekhayel, and Kelsey based on their delivery of certain meal trays.

Moreover, Plaintiff states that he submitted health care kites regarding his itching and skin condition, which were not acted on by health services.  Plaintiff fails to allege facts showing that Defendants Morris, Felver, Piggott, Ketchum, Mekhayel, and Kelsey interfered with his kites or were responsible for health services failure to provide him with medical attention. Administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care.  *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (custody officer entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006)

14

(holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell*, 867 F.2d at 959).

Because Plaintiff's allegations regarding wrongdoing by Defendants Morris, Felver, Piggott, Ketchum, Mekhayel, and Kelsey are entirely conclusory and unsupported by specific factual allegations, they fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Defendants Morris, Felver, Piggott, Ketchum, Mekhayel, and Kelsey are properly dismissed.

## V. Motion for a preliminary injunction

Plaintiff has filed a motion for a preliminary injunction (ECF No. 4) seeking to be transferred to a level II security unit[1] at Saginaw Correctional Facility and to have visits with an offsite physician. Preliminary injunctions are "'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers.

---

[1] Plaintiff is currently classed to security level IV at IBC. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=462766.

*Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same).  "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'"  *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).  Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984).  The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.  *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).  Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits.  *Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1943–44 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action.  *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989).  Plaintiff has not made such a showing.  It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his Eighth Amendment claim.  Although the Court makes no final determination on this issue, it

16

appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

In addition, the interests of identifiable third parties and the public at large weigh against an injunction.  Plaintiff seeks to be transferred to a lower security setting at a different prison.  Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation.  Any interference by the federal courts in the administration of state prisons is necessarily disruptive.  The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.  *See Glover*, 855 F.2d at 286–87.  That showing has not been made here.

While Plaintiff states that there is a danger of injury because of alleged on-going abuse by employees who have not been named as Defendants in this case, his allegations are largely conclusory.  The Court's findings under the other factors are dispositive of the issue; therefore the issuance of a preliminary injunction is not warranted in this matter.  Accordingly, Plaintiff's motion for preliminary injunctive relief will be denied.

## VI.   Motion for appointment of counsel

Plaintiff has filed a motion for appointment of counsel (ECF No. 3).  Indigent parties in civil cases have no constitutional right to a court-appointed attorney.  *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993).  The Court may, however, request an attorney to serve as counsel, in the Court's discretion.  *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.  In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to

prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.  The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position.  Accordingly, Plaintiff's request for appointment of counsel will be denied.

VII.   **Motion to amend the complaint**

As noted above, Plaintiff filed a motion to supplement his complaint (ECF No. 12) and provided the Court with an amended complaint (ECF No. 14).  Under Rule 15(d) of the Federal Rules of Civil Procedure, a party may seek and the court may permit supplemental pleadings "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  *Id.*  A motion to supplement a complaint under Fed. R. Civ. P. 15(d) is properly addressed to the discretion of the trial court.  *Allen v. Reynolds*, No. 89-6124, 1990 WL 12182, at * 2 (6th Cir. Feb. 13, 1990) (*citing Otis Clapp & Sons, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985)).  While leave to permit a supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action.  *Planned Parenthood of S. Cal. v. Neeley*, 130 F.3d 400, 402 (9th Cir. 1997).  Where a motion seeks to add entirely new claims that occurred before the original pleading, the motion is properly considered to be a motion to amend, not one to supplement.  *Michael v. Ghee*, 498 F.3d 372, 386 (6th Cir. 2007); *see also United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002) (within the meaning of Rule 15, supplements relate to events that have transpired *since* the date of the original pleading, while amendments typically rely on matters in place *prior to* the filing of the original pleading).

As stated above, Plaintiff seeks to add claims that occurred prior to the filing of his original complaint.  Therefore, Plaintiff's motion must be construed as a motion to amend.  The Court notes that Plaintiff's amended complaint contains all of the allegations identified in the motion.  Therefore, the Court will accept the amended complaint as satisfying the motion.  A party

18

may amend his or her pleading once, as a matter of course, in the preliminary stages of a case. Fed. R. Civ. P. 15(a)(1).   Therefore, the Court will grant Plaintiff's motion to amend.   The allegations set forth in Plaintiff's amended complaint have been addressed by the Court in the body of this opinion.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Robinson, Macauley, Moyer, Russell, Morris, Felver, Piggott, Ketchum, Mekhayel, and Kelsey will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).   Plaintiff's Eighth Amendment claim against Defendant Langdon remains in the case.

An order consistent with this opinion will be entered.


Dated:   __October 18, 2021__                         __/s/ Ray Kent__
                                                            Ray Kent
                                                            United States Magistrate Judge